Appellant v. Federal Election Commission. Mr. Hancock for the appellant, Mr. Guzmanza and Ms. Guerrero. Thank you. Good morning, Mr. Hancock. Good morning, Your Honors. May I please report Kevin Hancock on behalf of the appellant and Citizens United. Your Honors, we respectfully request that this Court reverse the District Court's denial of End Citizens United's motion for default judgment. The District Court erred by relying upon a post hoc rationalization that purported to explain the Federal Election Commission's dismissal of End Citizens United's administrative complaint. Under black-letter administrative law, judicial review of agency action is limited to the reasons invoked by an agency at the time of the challenged action. And you hear, despite that, the District Court relied upon a statement of reasons issued by the FEC months after the challenged dismissal in this case, after litigation challenging that dismissal had already been filed, and indeed after the 60-day statutory deadline by which any party could file a challenging that dismissal. Now, critically, the District Court's decision to rely upon this statement did not rely upon any finding that the statement was actually timely or issued contemporaneously with the dismissal. Instead, the District Court offered three other reasons not related to timing, and all of which are erroneous for the reasons which I'm happy to explain now in turn. Let's suppose we agree with all of that. Let's suppose, for the sake of argument, that under Regents, we can't, the District Court could not have considered that statement as far as whether or not the decision that was made, I guess, in April of 2021 was. You know, as consistent with law. Under our precedent, the remedy would be if the District Court could do one of two things. It could say either that statement wasn't robust enough to allow review, or that statement itself was contrary to law, and the Commission has to have a do-over. I don't really see your complaint making the latter argument. So it appears that your claim was really that that statement wasn't sufficient to allow review. Well, under Common Cause and DCCC and our case law, relief you get is a remand for better explanation, more fulsome explanation. And you got that more fulsome explanation after the lawsuit was filed. So maybe you had a claim when the lawsuit was filed, but why wasn't your complaint moved, essentially, once that resuscitation statement was issued? Because there's no more redressability at that point. You've gotten the relief that you would have gotten had you won your lawsuit. Your Honor, our argument is that the dismissal is contrary to law because it's unexplained. Because on the administrative record, it cannot include… And if you win that, you get a remand for an explanation. Right? Under Regents, it would be our position that the correct path would be remands for the agency to consider the issue of threats. This isn't a Regents' case. This is not a Regents' case. This is the question. This requirement for the controlling commissioners to file their explanations, this is all a feature of this circuit's case law. Right? That's correct. So isn't that right? So the question we should be focusing on here is what… So in many cases, quite a few cases, we've reviewed statements like this that come late and found them perfectly adequate for judicial review. True, we haven't decided this issue before, but we have. So shouldn't we be… And I'm not saying that's the answer, but isn't the question before us really what… Resolving this issue, we should do so in a way that promotes the purposes of our case law here. And the purposes of our case law is to create a record for judicial review. That's it. Right? It's not a Regents' case. This isn't an APA case. Well, we would submit that the FECA case law that has addressed the specific application of these principles in the FEC context, so like DCCC, Common Cause, new models, that they are consistent with those background principles described in Regents. Well, that's fine. But still, I think the question you have to answer is why, since we impose this requirement to promote judicial review, what is it about allowing the district court considering a statement that came from the same two… It's from the same two commissioners, same reason. And it's before… Yes, after the complaint was filed, but before anything began in the district court. So what precisely allows… What precisely means that the district court can't consider that because it is an inadequate basis for judicial review? Isn't that the question? Well, yes, Your Honor, we would submit that judicial review is actually undermined by allowing… Okay. Exactly. That's the question. So why is it? For a number of reasons. So, first, an untimely statement fails to promote Regents' agency decision-making because it makes it more likely that the statement issued late and indeed after the deadline for litigation is a convenient litigating position put forth by members of the commission. Well, we know they exercise… We know they asserted prosecutorial discretion, right? We know that. And this statement just explains it. They haven't exactly… They haven't changed their position. Is your point that, well, maybe this is stronger than it might have otherwise been had it been issued simultaneously? No, we would say that the… Your Honor is referring to the failed vote to dismiss pursuant to Heckler, that that cannot act as an initial explanation. No, I agree with you about that. I agree with your brief about that. But my only point is there's nothing post hoc about this statement because all it does is explain the exercise of prosecutorial discretion, right? No, Your Honor, we do think it's post hoc. So it's inconsistent with this court's decision in new models. In that case, which is a case that explains and enunciated that where a statement rests upon prosecutorial discretion, the agency's failure to go forward is not reviewable. Despite holding that principle, that court still nevertheless reaffirms DCCC and its requirement that the commission, the failure to go forward commissioners, issue a statement of reasons explaining their action. And it explains that the reason for that is until the public and the courts are able to see that statement of reasons, it's not clear whether the commissioners have actually effectively asserted prosecutorial discretion in a way that would shield the dismissal from judicial review. Let me try to understand what you say we should do at this point. What you say we should do is to hold that the statements that were made. Now, there were two votes that were taken, one on April the 20th and one on April the 22nd. That's right. That whatever the statements were made by the two controlling commissioners in those two votes were insufficient to allow the court to review. Well, just to clarify one point, the statements made by commissioners were made more than two months later in their statements. Well, okay. Whatever was said at that time of those votes, whether you call them statements or the orders or the minutes, whatever we have, the record from those two votes is insufficient. And therefore, we can't review. So under common cause, et cetera, we should remand. But instead of remanding for further explanation and just ignoring what they did two months later, they have to have a do-over of the vote? Or are you saying that we just ignore what they did two months later and remand for further explanation of the previous vote? Which of the two are you saying we should do? Review agency action, Your Honor, because an unexplained agency action is arbitrary and suspicious and therefore contraries to law under FECA. But we've never held that before. We never held that in common cause, right? Well, I didn't say new agency action. We said further explanation. So in DCCC, the court – and Your Honor, I see my time is up. Answer my questions until I tell you to stop. In DCCC, the court did remand to the agency for further explanation. But in footnote 6 of that decision, this court also did specify that it rejected a post hoc explanation the FECA attempted to in litigation put forth to explain the unexplained dismissal at that time. And when it remanded and when it sent it back down, I don't know if the court was 100 percent clear or whether it was requiring new action or just further explanation later on. But in either event, that court was – that decision was the first decision this court – where this court has ever held that the FECA has to issue an explanation for a dismissal resulting from deadlock. So it makes sense that – Well, this is very important. I mean, even Regents says, look, there's two things that can happen if there's an insufficient explanation. You can remand for a more robust explanation of the previous action or you can remand for action anew. The Chief Justice's opinion makes that clear. So we have a choice. What I'm saying to you is I've never seen a case where we have articulated that under this doctrine, the common cause, DCCC, whatever you want to call it, doctrine, that we do the latter, which is for decision anew. Can you point me to any instance where we have? I am aware of no decision in the FEC context, but I would like to add that in Regents, in describing that first path, the Chief Justice specified that that first path is only available if there was some initial explanation indicating the determinative reason for the agency's decisions, which is akin to the judge memorandum in that case. And here there's nothing in the record that's akin to that as an initial explanation that could then be later supplemented by this late statement. I'm sorry. Do you want to continue? Go ahead. Because I'm going to just continue with your question. I had the same question, Judge Wilkinson. Let me try to get at it this way. Let's assume that we agree with you that district court should not have considered the late filed explanation and that the proper remedy is a determination that the commission has failed to give a reason for its decision. And therefore, what would we do? Would we – would the district court enter default judgment at that point? What would – well, whether it does that or not. Let me get to my question. Under the statute, the commission has 30 days to conform to that declaration. Let me step back and ask you a question, and then I'll come back to that, okay? This is all about preserving your right to go to court, right? But you want to be able to file your own suit after this is over, challenging these actions under the statute, right? Preserving that right. You want to preserve – that's what this is all about. Okay. So if this goes back one way or another, either because we remand or just enter judgment, the commission under the statute has 30 days to conform its – conform with such declaration, right? That's what the statute says. That's correct. So suppose at that point the two commissioners reissue their statement and they say, okay, you didn't consider this because it was too late. You've now said there was no explanation given because there wasn't any on the record, but now here it is. And that's unreviewable, right? Well, it would be our position that the agency would have to engage in new action. So there's a number of possibilities there. It could decide to go forward. Well, it's not going to do that. I mean, at least I don't think so. That would solve the problem, I agree. But suppose it doesn't. Your Honor, if I may offer reasons why that might be a possibility. Yeah, go ahead. So the commission is composed differently now than it was in June 2010. There's a new member that wasn't there before. Additionally, facts before the commission have changed. Statement of reasons that was issued in June 2010. One of the key reasons those commissioners cited for exercising prosecutorial discretion is the commission had just had a long period of lacking a quorum. They had just regained that quorum and then cited a backlog resulting from that quorum. Conditions presumably have changed a year and a half later. I don't know what they are, but the commission could decide based upon the new landscape that exists today that a different action is appropriate. Okay, so I see. That's helpful. So under your theory then, we agree with you that district court should not have considered this and enter judgment in some way for you. That what happens before the commission, there's nothing before the commission basically has to start over, right? Is that right? It has to start afresh and make a decision on what it's going to do about the charge pending before, correct? That's correct. Just one last question. Would we remand? Would we order default judgment? What do we do if we agree with you? I think the court could reverse and with directions to enter default judgment and along with the declaration that the agency's dismissal is contrary to law. That would require the district court then to remand to the agency under FECA for the 30-day period you referenced. It's also possible that during that 30-day period, the commission might do nothing. In which case, that would trigger Citizens United Citizenship Rights. Sorry. So what is your best authority for why the commission would have to essentially start anew and take a revote as opposed to allowing the controlling commissioner to buttress their reasons? Aside from reasons, I would say AT&T versus GSA. I'll give you an example of a case where there was unexplained agency action that later the agency attempted to use a post hoc explanation to explain. Or this court rejected that post hoc explanation and then remanded because unexplained agency action is a sort of arbitrary incursion. So no FECA case, you can cite me, right? I'm not aware of a FECA case that presents these precise facts. I would reference the commission on any FECA case involving any FECA case. Well, any FECA case that involved an insufficient explanation. You can't cite any. Commission on HOPE. Commission on HOPE specifically said that it's impermissible for a commissioner to update the administrative record after litigation is already planned. It was a non-controlling commission. True, but that factor was not dispositive in this court's decision because it accepted a separate statement of reasons that was given by also other non-controlling commissioners. It accepted it because it was timely. And we think the district court should have followed the commission on HOPE precedent to try to distinguish it on those grounds. But again, going back to reasons, the problem with post hoc is not the person, it's the timing. And I think commission on HOPE illustrates that principle. So. You're saying that our line of cases that said that the remedy is to remand for further explanation. Essentially. Can't work anymore. It's just as a matter of EPA administrative law. Post regions. Essentially. Well, I. I think regions is just exemplary of the underlying foundational case law of this court and the Supreme Court on administrative law, which the FECA is one application of. And, you know, admittedly, not all the cases are tremendously clear about. Applying the rule against post hoc rationalizations, but we do think that the chief justice and regions was very clear. And to the extent there may be conflict in the past with regions, very clear explanation of these two permissible paths regions should control. Well, I mean, generally speaking, I mean, the debate between the chief justice and the centers on that point. Was about most of the post hoc cases, rationalization cases, for instance, where counsel. In the course of defending the agency act and is is raising something and courts said, well, we're not going to accept that. So, the descent said, you know, that's why post hoc rationalizations are bad because they're being propounded by counsel instead of the agency. And I think the chief justice down 1 example that he cited in regions and trying to remember the case. Where he said that, no, that was an instance where where we said that rationalizations were bad, even in the agency context. But but in general, that has been the problem is that they're not just too late, but they're also. I think what regions did was make clear that the rule is that if they're too late, then they're a problem and they're a problem because. They kind of inhibit the court from being able to review properly, but that just brings me back to my original question to you. And even if I agree with all of that. That still doesn't. Necessarily apply to this line of. Where we have always said, and if you've been knowing that. That that the new reasoning is going to be post hoc and after there's been litigation. Where we have said. Remand is for further explanation for. Do. So, it seems to me, you've got to say your position has got to be that regions changes landscape. Right? Well, I, I don't think it necessarily does, because common cause was very clear that the statement of reasons required by must be issued at the time. Of the agencies. And so that requirement is consistent with. Background principle of administrative law articulated in state farm and other cases that were the rule. Then why, you know, years later in common cause, would we say, okay, you. Remand for further explanation instead of. Or do. I mean, there will be no reason to even talk about further explanation. Remedy would just be do a statement has to be at the time you make the action. Given regions is very clear statement that there must be some initial explanation that can then be later supplemented. You would submit that anything consistent with. The justice ruling that opinion. Is it consistent with current law? Well. If the initial statement or order, however, brief uses the words, prosecutorial discretion and heckler be Cheney. Isn't that different? Because of just the nature of that type of a reason. No, because new models includes that theory. Your honor new models tells that the commission's indication of cost for discussion in a statement. There are certain conditions shields dismissal from judicial review. But nevertheless, new models was very clear the way we determine whether the agency effectively did that. If we look at the same every new model specifically reaffirmed, of course, holding a teacher. And there's a very good reason for that. It's because the courts in the public cannot determine whether the indication of process for discretion was effective. In order to insulate the opinion from judicial review. Unless the commission expresses the reasons why it wants to assert process for discretion. The new model explains, and this was later supplemented by the author of that opinion. Judge her concurring opinion in the denial of hearing on. Even though a statement that partially asserts discretion is sufficient to insulate the statement from judicial review. Nevertheless, that portion must still be independently based upon traditional discretionary factors, such as resource allocation and the like. To the extent that the commissioners say. We want to go for discretion, but they do so because they, they have a dispute about the legal reason that the interpretation of. That interpretation of is still subject to law review. Under the judicial review provision of the federal election campaign, which makes the, of course. Very unique from from other agencies, and when they serve. And if they need for this. Rogers any questions. Well, 1 thing. I take your point. But. After all, you know, a judge's statement on denial of rehearing is not the same as the decision of the court that's finding. But that aside, what about our decisions where we have said. That where an agency is simply elaborating or. It's not changing its basic position as to why it's taken the action. It's taken. But the court says. That may be well and good, but we need further explanation. So we send it back. So, we've acknowledged in effect your situation. Haven't we? No, your honor. Yeah, go ahead. There must be something to elaborate on in the 1st place. I think it's what region says very clearly. And here we submit that there was no initial explanation in the administrative record for why the agency dismissed. The statement being so late and being post hoc is not part of the administrative record. The record is silent. Well, what I'm getting at is. It's not as though we have allowed the agency to say, well, we talked about processing to our discretion immediately. Now we're talking about timeliness. So, we haven't gone that far, but we have. In many instances, given the agency another opportunity, and indeed, if the agency changes its rationale that a new rulemaking may be required, but. I'm just trying to understand. It's very nice if we just say, well, regions, we have a clear rule. Now we know what it is. The agency knows what it is and. You know, it will. As all these agencies do come up with what I call some standard language as to what it means when it says it's invoking prosecutorial discretion and the standard will. It could say backlog, but maybe there is no backlog anymore. So we'll reference that, but it'll talk about other factors that cause it in this case to decide that. It really would not be a wise expenditure of its limited resources. So. I understand about. It's important in administrative law that agencies follow the law and be. Not try to circumvent it, but this is not really that case, is it? And that's what I think is making us uncomfortable. Now, your point about how even in these other remand situations. The courts have acknowledged. Well, times change, maybe not in two months, but, you know, by the time the case gets up to an appellate court and then goes back to an agency. And even so, an agency member. May simply change his or her mind. It's one thing to do it sort of. Summarily, it's another thing to have to say why and maybe that discipline in itself is enough. To assure. That we're not having arbitrariness and the argument is, well, you're trying to protect your right. To get into court. And so I think. It's not necessarily as easy as you want to make it, but we'll have to figure out how to make it clear because I think that's part of the problem right now. Your Honor, if I may. I think the value of requiring the commission to express whether it's trying to invoke a process for discretion at the time of the actual dismissal. Is that initiates the risk that the agency is simply using process for discretion as a convenient litigation position. Here, this statement of reasons was issued 4 days after Citizens United filed its lawsuit. The statement is fewer than 4 pages. It invokes process for discretion. And that seems to fit a pattern observed by some on the support that there's been a significant uptick in the commission. Reflectively asserting process for discretion to explain dismissals. Commission on hope and new models rules that that insulates the commission's failures to go forward from judicial review, which we review as a change in the law. Could you just explain to me once more what. Assuming you win here on your theory that the district court can't consider the statement. Could you just explain to me once more the role of the conforming language in the statute? What role will it have on remand? What will the agency be conforming its decision to? To the district court's order declaring the dismissal contrary to law. Okay. And when it does that, will it. I got that much. But what exactly does that mean? What will it, what suppose the commission contrary to your hope doesn't change its mind. Suppose it sticks with this action. Is it your point that it can no longer explain away the first decision that has to start over again? Or could it now just issue a explanation of why it exercise discretion? It has to start over again. But why? It says conforming. So your point then is that. What is contrary to law is its failure to give a contemporaneous reason, right? That's what's contrary to law. And the only way it can fix that is by starting over again. Because if it issues a new statement, that's even later, right? I guess I would say. The dismissal itself is contrary to law. The dismissal itself is illegal because it was unexplained. Because it was unexplained. And the reason it can't remanding it for the commission to repeat its explanation is that that explanation would now be instead of just a couple of weeks late, several years late, right? Well, that and there must be something to explain. So if the initial dismissal is illegal, under the contrary to law standard, the commission has to. The original dismissal wasn't it was for prosecutorial discretion. That's the reason they gave in that note, right? In the post hoc statement, which probably should not be considered for the record. So on the record, which should exclude that statement, the dismissal itself is unexplained. And so didn't the record before the commission indicated that. That prosecutorial discretion had been asserted, there was just no reason given. Am I wrong about that? I think that that appears on the record. There was a vote held to dismiss the case pursuant to Heckler v. Cheney, which is a vote the commission often takes. Yeah, that vote failed two to three. The two commissioners who later, who also voted against finding reason to believe against moving forward with the enforcement action are the ones who voted in favor of that Heckler motion. It has been suggested that that vote in and of itself could serve as a sufficient initial explanation that could then be later elaborated on. But our friend has cited no case law indicating a vote in and of itself could be an explanation. And that theory is precluded by new models DCCC, which again requires a statement of reasons despite the fact the prosecutorial discretion does have this insulating effect. So just so that I understand how this works. On April 20th, 2021, and this is at your appendix at page 86, there's a certification about what occurred. I'm sorry, there's a certification about what occurred on April 20, 2021. And the first item listed are what were the results of votes about whether essentially actions that were taken contrary to PICA, right? Correct. Under this reason to believe whether there was reason to believe that certain actions were contrary to PICA. And those votes failed by a vote of three to two, because there were three commissioners who thought, yes, there's reason to believe, and two who said, no, I don't think there's reason to believe. And then two days later on April 22nd, and that's the certification that begins at 890, we see that there was a vote on whether to dismiss under Heckler v. Cheney this claim. And there were two in favor of dismissal and three against, and the same two found no reason to believe. And so those two are the controlling commissioners. And to the extent that we have any contemporaneous statement, if you want to credit that as a statement, that's what we have at essentially at 890, that your position is that correct understanding of the record here. That is what occurred, but you would take issue with the characterization of the vote to dismiss under Heckler as any kind of statement. And I think that characterization would be inconsistent with not only FEC procedure, but this court's case law. So again, going back to DCCC and its progeny, the vote that matters for purposes of explaining a later dismissal, which here is the 5-0 vote, is the failed reason to believe vote, the deadlocked reason to believe vote. And the statement of reasons must explain why the failing to go forward commissioners voted against reason to believe in that vote. Well, help me understand that. Because we're reviewing final agency action. So this is a final agency action. You're saying that we get to review both of those votes, not just the April 22nd vote, but also the April 20th vote? DCCC has said that for purposes of valuing the dismissal, which technically occurs with the 5-0 vote, the substance of the reasons why it was eventually dismissed, the failure to find reason to believe, is what the court looks to in order to explain that later dismissal. And accordingly, the commission's own enforcement guidebook says the statement of reasons must explain why the failing to go forward commissions declined to adopt the general counsel's recommendation that we find reason to believe. So the Heckler vote and the RCB vote are different votes. They ask different questions. And again, DCCC, this court said, the statement of reasons is required, even if we assume all deadlocks are at some level an exercise of prosecutorial discretion. The FEC made that argument. They cited Heckler. And they said, look, all deadlocks are just prosecutorial discretion. We don't need judicial review or a statement of reasons. And this court disagreed in that case and said, no, statement of reasons is still required, even assuming that that's true. So this is a similar, I would say a variation on that same argument. So the certification is dated on May the 5th. What's the significance of this certification? Is the date of the certification the actual date of the final agency action? No, Your Honor, it's the date of the actual vote. The date of the certification is just the date that the commission secretary certifies that record, reflecting that the vote occurred on that date. So just so that I understand this, because we judges need to understand practical realities of whatever we order or don't, you're saying that at the time that the vote, that they show up for the meeting for the vote, they should already have written out all of their statements so that that could be placed in the record at the time that they vote to dismiss any further enforcement act? No, Your Honor, we don't think any rule needs to be that rigid to satisfy the at-the-time requirement or the contemporaneous statement requirement. Our position is that a logical outer boundary for that requirement could be the 60-day deadline in order to file litigation challenging that dismissal. Again, to the extent that the rule against post hoc rationalizations is concerned with preventing agencies from explaining their actions with litigation, it makes sense to prevent an agency from waiting until litigation is filed, looking at what's filed, and then submitting an explanation for their long past action that is geared towards responding to the litigation. So help me understand, is the deadline to file the litigation, the clock starts ticking 60 days later, or you have up to 60 days after the action to file your litigation? You have up to 60 days from the date of the file closure, the file of litigation. So from the date of the April 22nd, where the 5-0 vote. So you could have filed your case on April 23rd, and it would not have been premature. The problem with your 60-day deadline, though, is you can just see it in the next case coming up. All we knew as of April 23rd is the commission had some reference to Heckler v. Cheney or prosecutorial discretion, but we don't know why. And we're not going to know that until the date by which we have to file our action in court, our notice of action. I think there's some unreality to that. I mean, before you know that you want to file an action, you want to know what the agency's decision is, I thought. And if the agency comes up with, you know, just hypothetically, a 10-page explanation of why prosecutorial discretion makes sense in this case, you might decide, you know, no point in filing litigation, but you're not going to know that until the day your notice of filing is due. I don't understand that as just a practical way of understanding how the process would work. I understand the practicality of not requiring a commissioner to come to the meeting on whether to close the file with a written statement. But, I mean, maybe something, I don't know, 72 hours. I don't know what it would be. I mean, the commission could make that decision initially. Go ahead. Excuse me. Sorry. We sympathize with that concern. When we decide whether to file litigation challenging a commission dismissal, we would prefer to see the commission's statement of reasons explaining the reasons for the dismissal first, so we can determine should we challenge this, is there a basis for challenging it or not. It's max of gamesmanship to allow the commission to wait out the statutory deadline to preclude organizations like End Citizens United. I don't understand why you would agree with it. All right. I don't need to understand your reason, but I just wanted to know. I have certain concerns about that approach. I mean, we're setting ourselves up for a lot of other litigation. I guess what we're struggling with here is the workability of your 60-day rule. You're the litigator, not me, but I assume what you would do, correct me if this is wrong, I assume what you would do, you get a decision on day one that starts the clock running, and you wait the 60 days for the commission's explanation, right? The controlling commissioner's explanation. If it comes on day 30 or 40, then you can make a judgment about whether to file a lawsuit, right? No, but my counsel, he's saying it comes on day 60 or day 50. I was about to finish. I was about to finish. That's where I was going. I assume if it doesn't come until day 60, on day 60, you file your lawsuit, and if a week or two later, it turns out to be satisfied with the commission's statement, you withdraw your lawsuit, or if you decide to continue, you amend your complaint to reflect what the commissioner said, right? Isn't that what you would do? That's correct, and we did something similar in this case, given the late statement of reasons, but I would submit that this does not lend itself to orderly judicial review, which is one of the reasons Chief Justice Roberts said in Regents that we require timely statements and not post hoc statements. That's right, but you yourself said, you yourself said you would, when Judge Wilkins asked you what the out-of-limits is, you said it's 60 days, and I assume that that's okay with you, that that's your interpretation of statute, and therefore that you would then have to deal with the problem that both Judge Rogers and I raised, what happens if the explanation comes on day 60, right? And you would just be ready to file your lawsuit that day, right? Isn't that the way it would work? That would be feasible. We think that 60 days is a workable outer boundary, but not necessarily where the court has to live. You know, would you rather us say 30 days? But, I don't know, I guess since we're making this up, we've been making this stuff up for all these years, we can make up some more, right? There would be some logical to a 30-day rule if the commission does release the administrative, right, what they call the MUR file, the matter under review file, so they're basically an administrative record. They release it 30 days after the dismissal, after the cost. Oh, that's interesting. And that's by regulation? I believe that's right. So let's suppose on April 22nd, the commission acts and declines to proceed, and the very next day, someone files. And then, you know, on the 60th day after April 22nd, the commission issues, the controlling commissioners issue a statement. Can the district court consider that statement? Well, I wouldn't pin the rule to exactly where in the timeline the complainant files it to. And I think the reason for that is, you know, the concerns about post hoc statements go beyond merely just, I didn't ask for a rule, I asked for an answer to my question with my facts. Under the proposed rule, the outer boundary of 60 days, if it was within that, then yes. So that post hoc statement, after they've seen the complaint and after litigation has commenced, that one's okay. Under a 60-day rule. And why is that consistent with region? Because it still doesn't lend itself to region-based decision-making. You know, regions gave a number of values promoted by timely decision-making. You know, the gamesmanship aspect was just one of them. But in addition, agencies make better decisions when they're required to grapple with the reasons for why they're acting contemporaneously with their actions. It gives them a chance for self-reflection and correction. You know, maybe their decision-making is improved because they are forced to articulate it at the time of the actual action before it's too late. Let me go back to your answer. I'm confused. Can you go back to your answer to Judge Wilkins' question? I thought you said that, am I right, that if under your theory, under your view of this, let's assume we go with the 60-day rule. If the commission's statement comes, if the controlling statement comes after 60 days, it can't be considered, right? Isn't that your view? Period. Correct. Okay. So, but my question is, day one, the commission declines enforcement. Yeah. Day two, someone sued. They say, set aside the decision as contrary to law because there were no, there was no explanation. You can't review. After you have filed your suit, but within day 60, the controlling commissioners issue a statement. And my question to you is, is that statement timely and can it be considered by the district court? And your answer was yes, right? Correct. Under a 60-day rule. As long as it's issued within that 60 days, right? Correct. Now, the district court, I assume what would happen is the complaint would be filed on day two under Judge Wilkins' hypothetical, and the district court would say, okay, let's just, we're not going to do anything until day 60. See if the commission gives a reason. If it does, then we've got a case. If it doesn't, then we won't consider it, right? Is that what would happen? Correct. Okay. And I think there necessarily has to be some balancing between the concern about post hoc statements, but also giving the commission sufficient time to articulate its reasoning. And, again, the standard is at the time or contemporaneous, it isn't precise. Well, I think this takes us back to where Judge Wilkins started. So, we're way over time here. Judge Rogers, do you have any other questions? Well, I have a general comment. I don't think this is the proper forum for the court to try to come up with a rule to bind the agency. And all three of us are frustrated. We're former litigators. And I'm just wondering about the system that we envision here. And the Chief Justice is also a former litigator. So, at any rate, I have no further questions. Thank you. All right. Judge Tatel, no further questions. All right. We'll think about giving you some time on your book. All right. How about we hear from our court-appointed amicus, Mr. Posada? Thank you, Ron. Good morning, and may it please the court, David Posada as court-appointed amicus. This court has repeatedly held that the FEC has unreviewable prosecutorial discretion to decide whether to bring an enforcement action. Two commissioners invoked that discretion when they voted to dismiss the allegations under equity versus change. They later expanded on their reasoning in a statement of reasons released soon after. And Citizens United identifies no case in which this court has declined to consider a statement of reasons released by the controlling commissioners, never mind a statement released on a similar timeframe. Of course, we've never decided that question either, right? It hasn't been decided, but in a number of cases, this court has. Yeah, we have, but we haven't decided the question. This is an open question right now, right? That's correct. Okay, fine. So go ahead. Even assuming that such a gap in time were relevant, decades of case law, including reasons, make clear that when a determinative reason for agency action is apparent in the record, the agency decision-makers may later elaborate on that reasoning with a supplemental explanation, which is what took place here. Moreover, the remand that ends Citizens United's case would be what Common Cause calls an exercise in futility and a waste of the commission's resources. This court has repeatedly held that remand is not appropriate when the agency's reasoning is readily discernible and remand would bring no change in the outcome. And I think Common Cause is a good place to look in answer to your Honor's question about what would happen on remand. The court there makes clear that what they're asking the agency… I'm sorry. I'm sorry to interrupt you. I was thinking about your statement that this is just an explanation of an earlier decision to exercise prosecutorial discretion and that agencies can update it. And Citizens United, they say in their reply brief that the failed Heckler vote wasn't what dismissed the case. That didn't occur until the commission voted unanimously to close the file, and that's what we're reviewing. That's correct, Your Honor, but the failed vote on the finding of reason to believe is also not what's the subject of court review. And yet for decades, the DCCC and Common Cause statement of reasons requirement has been structured around what happened in the finding of reasons to believe vote. So while the 5-0 vote to close the file is the subject of court review, all of the FICA cases in DCCC are built around what happened in the finding of reasons to believe vote and the votes leading up to the vote to close the file. Here, two commissioners voted to dismiss the allegation under Heckler v. Chaney. Now, anyone familiar with Heckler v. Chaney would know that that is an invocation of prosecutorial discretion and their unreviewable power to decide whether to send agency resources in this particular instance. But you are acknowledging that the vote on April the 20th was a vote to find no reason to believe that the law had been violated and that that is reviewed, right? What's being reviewed here is the 5-0 vote to close the file. The 3-2 vote of finding a reason to believe informs what the judicial review process looks like. But once the commissioners have invoked their prosecutorial discretion under new models and under Commission on Hope, review is at an end. Let's suppose the facts were the exact same as in a case where the Supreme Court had held 9-0 there was a violation of FICA. And the general counsel pointed all of that out in their memorandum, but yet there was still a vote by two commissioners that there was no reason to believe that there had been a violation of the law here. We couldn't review that at all? If there is no indication in the record... Just because they later said we're exercising our prosecutorial discretion to vote against enforcement action? Well, that's the consequence of this court's decision in new models. When the commissioner explains... So the answer to my question is no. We couldn't review that if they said, yeah, we know that this case is on all four with the case that the Supreme Court decided last week, 9-0, that said that this was a violation of FICA. But we don't think that there's a reason to believe that there's a violation of law here. We wouldn't review that at all because they later said prosecutorial discretion. Yes or no? You would not review it. That is correct. If the controlling commissioners explain that their decision not to pursue the allegation was based on an exercise of prosecutorial discretion, new model says that that is an unreviewable... Do you really want to go down this road because I have a whole bunch more questions? I believe... You have a chance to decide whether you really want to go down this road. I believe that's the consequence of new models, but I would point out that in this case, it's not necessary for the court to decide whether the vote alone is sufficient. So let's suppose they said, well, it's the third Tuesday of the month, and we're not going to vote for enforcement ever on the third Tuesday of the month, and we're exercising our prosecutorial discretion to do so. That's unreviewable. It's possible that if the agency is acting in a way that violates some other... Yes or no? That's reviewable? Yes or no? I don't believe it would be. I think new model says that when the agency invokes their prosecutorial discretion, that reasoning cannot be disaggregated from other reasoning. Okay, so they say, well, these people who are accused of the campaign violation are white, but if they were black, we would vote to enforce, but because they're white, we're not, and we're invoking prosecutorial discretion. Reviewable? Yes or no? I think that that could be reviewed in litigation. I don't think it would be a FECA challenge. I think there would be another source of substance of law showing that what the agency did there was unlawful in that case because it was discriminatory in violation of the Fifth Amendment and various other federal laws. So they say, well, the alleged violation was by someone who's of the same party as we are, so we think that there's no reason to believe, and we're not going to bring an action to enforce, that if they were from the opposing party, we would definitely, and we have multiple times in the past, voted for enforcement. But we're going to invoke our prosecutorial discretion not to, in this case. Reviewable under this? Yes or no? No, and I think that that concern is what informs a lot of the contention in this court in new models and Commission on Hope and in the disputed en banc votes in both of those cases. And the panels in both Commission on Hope and New Models say that when prosecutorial discretion is invoked, that is unreviewable. The court is not to review it for an abuse of discretion standard, so it doesn't matter. What about the language in Common Cause? I think it says that, you know, one of the things you have to see is whether they're treating like cases of life. Because that's the essence of arbitrary and capricious action, is not treating like cases of life. That's correct. Did you say that there? Yes, that's correct. Does one panel overrule another panel? One panel cannot overrule. So isn't that still good law? It is. It is still good law. So how is that consistent with your answer of no, that we couldn't consider where the commissioners say, well, because they're the same party we're from, they're not going to enforce. But if they were from the opposing party, we would, and we have on multiple occasions. If that is the only reasoning that is offered, that would be. Well, they say prosecutorial discretion. New models in commission law point to long-running case law saying that the court cannot disaggregate a reviewable reason from an unreviewable reason. So is your answer to my question yes or no? No? Not reviewable? If the commissioners have invoked a prosecutorial discretion, it is not a reviewable decision. Okay. You go ahead. I'm going to slightly change the subject and keep going. I was going to point out that in answer to your question to my friend about what would happen under a man's common cause here is helpful because it shows that what's being asked for in the statement of reasons is an explanation of why the commissioners acted the way they did previously. It is not an invitation. And you can tell that because the court talks about the practical difficulty of asking one of the dissenting commissioners in common cause to offer an explanation because he was no longer on the commission. And if they were asking the commission to entirely redo the vote, that wouldn't have been relevant at all. The new commissioners would have considered it entirely. But instead, the court said that it would be a useless exercise and that they were unsure that they even could ask such a statement of reasons when the commissioners went to party, making clear what they were asking for was an at-the-time-of-the-vote explanation. Okay. So I have a couple of questions about just about this question of whether the district court could consider the explanation from the two controlling commissioners. So my original reaction when I looked at this, just to give you a brief, I thought, well, what's the problem? It's the same two commissioners. It's the same reason. It's really before any litigation got started. What's the problem? But then I went back and I looked at common cause, and they give – common cause gives three reasons for why the statement should be at the same time. And one of those is to promote, quote, reasoned decision-making by the agency and, quote, create an opportunity for self-correction. So that's one reason to require the statement to be at the same time. And that's our circuit law, right? I mean, that's binding circuit law. So isn't it obvious that allowing the district court to consider a statement that was filed after the lawsuit was filed, it's completely contrary to this point. It doesn't promote reasoned decision-making, and it doesn't create an opportunity for self-correction. Well, I think that – Let me just say one more thing. I resonate to that because, you know, I can't tell you. We all as judges have this experience. We decide a case at conference, and we set about to write our opinion, and we later discover, wait a minute, as we say it doesn't write, and we reach a different result. Or we reach the same result with a completely different rationale. That's what this language is all about. And that is what allowing the controlling commissioners to file their statement later denies the commission that opportunity. I think the commission had that opportunity here. At the time that this vote took place, the commission had only recently regained quorum. It was facing a backlog of 446 matters, of which 275 were pending before the commissioners themselves. Now, prior to the vote, the general counsel's report had been exchanged, and the dissenting commissioners had exchanged internally edits on the general commissioner's report. They referenced those in the statement of reasons, which they later released, which shows that they had meaningfully engaged with their decision to invoke prosecutorial – Well, we all know that. I mean, that's certainly one view of it. But if the commission had been required to issue their statements 30 or 40 or 50 days later, who knows? They might have changed. They might have taken a harder look at the record. Just as writing an opinion disciplines our thinking, writing their explanation might have disciplined theirs. And this is, you know, as I said before, the D.C. Circuit's been making this stuff up for decades, right? And this is a controlling decision, common cause, and this reason is control. And therefore, when I look at this, I have to ask myself, will allowing a late commission – controlling commission file accomplish this purpose? And it seems to me, obviously, it won't. Well, you haven't given me a reason as to why, other than your hypothesis, it may be in this case they had already considered this issue. We don't know that. Well, two responses to that, Your Honor. The first is that, as Your Honor observed, this is – the statement of reasons requirement is something that is a product of this court's case law. Right. It is not found in FICA. Correct. And it is not found in the APA. Correct. I think there's a considerable question under Vermont Yankee – I agree with that, too. But I agree with that, too. The common cause is the law of the land, at least for us, right? And what common cause says – this is in No. 32 – is that the statement of reasons may only be adequate to allow for judicial review. Now, the cases that are – But it says more than that. It gives these three reasons, and one of the reasons is the one I read to you. And we don't pick and choose the parts of our opinions we follow. I mean, this is a critical part of the opinion about the need to promote decision – reasoned decision-making and self-reflection. And I don't see how we can carve that out. It said there are three reasons for this. This was one of them. That is one of them? The timing in which this statement of reasons was released is perfectly in accord with that requirement. Because the commissioners review the general counsel's report. They prepare comments on it. They go into executive session where they're going to be voting on a great number of matters. And absent going in with a pre-prepared statement of reasons for each, asking for a contemporaneous release would simply delay agency action on these pending matters, some of which were imperiled by the statute of limitations. Well, it could be issued within the 60-day period. It could be issued within the 60-day period, but I'm not sure where that requirement would come from. Well, it would come from the statute. We have 60 days to challenge it, so they've got to get it out within 60 days. And again, we're making this stuff up. So what makes sense? Well, that sort of makes sense. But let me take – you know, I can think of two more reasons why requiring a statement at that time within that 60 days makes sense. Maybe you can tell me why that's not the case. One is the one that consular petitioners make, which is, you know, it seems completely unfair to allow the commission to sit back and wait to see whether someone challenges a decision and then issue their controlling statement in a way that reflects the theory that the petitioner's complaint. In other words, it gives them a chance to shape their explanation in view of the type of lawsuit that's been filed. That's one reason. And the second reason is that I assume that in some circumstances a complainant would take a look at the controlling commissioner's explanation and decide not to sit. And then we wouldn't be wasting our time and resources considering just this question, right? Certainly, Your Honor. But aren't those two awfully strong reasons for requiring the statement to be issued within the 60-day period? I think they're particularly strong reasons when there's no invocation of prosecutorial discretion. Because if the question is whether the commission's legal reasoning is sound, then certainly that kind of analysis may be helpful to elicit it. But at the time N-Citizens United filed this lawsuit, they already knew— But then why did we—but then under that theory, that eviscerates the requirement for the commissioners to give a statement even if they're exercising prosecutorial discretion. Why did we require that except because we think it's necessary for judicial review? Because, as your model says, the invocation of—the length of the invocation of prosecutorial discretion is not dispositive or even particularly relevant. So in a vote where there is no Heckler vote, where there is only a vote to close the file, that certainly is a void. And N-Citizens United would have a typical choice there to make about whether to file a lawsuit. But here, at the time that they filed their complaint, they knew the two controlling commissioners had voted to dismiss under Heckler v. Staney. Now, they did not have a lengthy explanation of that invocation. But I don't see why that's necessary because this is a different analysis in kind than the sort that's taking place in State Farm or in the other cases where this court has reviewed what the commission has done. The review when the commission has acted in its prosecutorial discretion is not whether that invocation was reasonable or whether it was consonant with the record. It's simply whether they chose to exercise that discretion or not. So under your theory, is there any—we were discussing with Council Petitioner when he would require a statement to be issued. Is there any limit to your theory? I mean, could—under your theory, could the controlling commissioners issue their statement—here they issued it, what, four days after the complaint was filed? That's correct. Okay. Could they have issued it, say, while the district court was considering motions to summary judgment? I think that—I would point, Your Honor, to two— Yes, yes or no? Possibly, yes. Okay, could they have issued it after the district court decided the case and while it's on appeal? I think reason suggests— Yes, yes or no? That would be a much closer call. You think that's close? Perhaps not while this court's considering the case. There may be an outer bound on— What is it? I don't think it's necessary for this court to decide that. Yes, it is, actually. It is necessary because when we decide a case, we have to understand what the consequences of it are. And if we're going to agree with you that the statement is adequate, we have to know what the limits of it are. We can't just decide that and put off for another day what we think about the possibility of it being filed later. True, we don't have to decide that question, but we do need to understand the consequences of our decision. That's why I'm asking you the question. Certainly. I would point, Your Honor, to this court's recent decision in Campaign Legal Center. That's 31-F-4781. This court's decision was outstanding, but on remand, the district court did engage with the adequacy of the statement of reasons. That statement of reasons was released on August 21st, and the complaint was filed on August 2nd. Now, the question of timeliness was not litigated there, but what that shows is that sort of gap in time does not preclude effective judicial review. I wasn't asking about that gap. I was asking about a later gap, about while the district court is considering the case or after the district court has decided it or even while we're deciding it. Well, reasons would suggest that that may be a different consideration because there, the Nielsen Memorandum was released after multiple district courts had enjoined the agency action, creating a much stronger suspicion that the additional reasons that Secretary Nielsen was offering were created in response to adverse court orders. But the court nevertheless considered the Nielsen Memorandum to be extensive as expanding on what was already present in the Duke Memorandum. Here, the statement of reasons is expanded. It didn't consider it. It rejected it. It said that because there are new reasons that weren't in the Duke Memorandum, we're not going to consider it. So it looks at the Nielsen Memorandum and says there are three bases offered in the Nielsen Memorandum. One is a repetition of what was said in the Duke Memorandum, that the order there was unlawful. The second and third were not present in the Duke Memorandum. The Chief Justice engages with the first reasoning in the Nielsen Memorandum. He finds it unpersuasive because the Nielsen Memorandum doesn't seem to recognize the Secretary's discretion to continue to withhold deportation without the other consequences of that, which was the basis of the unlawfulness finding. But the Chief Justice does not disregard the Nielsen Memorandum in its entirety. So there you have the same thing present here, where the initial record has some indication of the agency's reasoning, a later supplement is released that expands on that same reasoning, and it provides for adequate judicial review. And I would finally add that a remand here would serve no purpose, and this Court's decisions, including environmental care, make clear that a remand is not necessary when the agency would simply re-offer the same reason that it already has, and the review would be at an end. Suppose, I'm sorry to ask this question, but I'm sure you get questions like this all the time. Suppose we agree with petitioners here that the district court should not have considered this. What should we do? What's the proper? The district court said, well, if you do that, he's just going to remand it to the agency to reissue it, basically, right? That's right. I think you should nevertheless affirm, and environmental care shows why. Because there, the agency, the question was whether the agency had correctly excluded an intervener from participating for the agency. And the agency said, this intervener does not meet the judicial legal standard for standing, and therefore we're not going to allow him to participate. During litigation, the agency additionally argued, we're not bound by the judicial requirement for standing, and we would exclude him anyway. The court said, you were wrong about the legal standard for standing, but if we remand to the agency, the agency will exercise its discretion to exclude the intervener regardless, and there's no point in such a remand. And how does that play out here? Well, how it will play out here is, and Citizens United is suggesting that the agency action is unlawful because it's unexplained. The commissioners have since. It was unexplained at the time of the decision. It was unexplained at the time of the decision. That's their own intention. Certainly. I disagree because of the Heckler vote, but. Let's assume you're wrong. Certainly. The commissioners have released their statement now, and if you were to remand as under common cause of DCCC to ask for an explanation of why they took the vote they did when they voted to close the file, they would simply reissue the exact same statement. If our reason for finding it unacceptable is because the filing of a late statement is inconsistent with reasoned agency decision-making and the opportunity for self-correction, having them reissue it now instead of a month later, two years later, doesn't solve that problem. It's still too late. Isn't it? It's still too late, but it's the remedy that common cause and DCCC contemplates. No, it's not. Oh, I'm sorry. Go ahead. Neither of those cases ordered a vacatur and a redo, and that's why in common cause there's discussion of the availability of Commissioner Wright. The question is, what was the reason for the vote at the time the vote took place? Here, I'm sure that the controlling commissioners would offer the exact same reason that they have already offered and that the district court would consider. So a remand would serve no purpose, unless there are further questions. Judge Rogers, any further questions? No, I'm fine. Thank you. So I just want to go back to your view of how we should look at Heckler v. Cheney, which is when Heckler v. Cheney, the court itself said that that prosecutorial discretion and enforcement decisions, there's a presumption of non-reviewable. That's correct. And it doesn't say it's an irrebuttable presumption. The presumption, by definition, means that there are circumstances to overcome the presumption. Do you agree with that? I would. Heckler itself contemplates that the complete abdication of agency responsibility may lead to the presumption falling away. But this FECA-specific challenge is not an avenue for bringing such challenges. And if they wanted to, they could do so through writ of mandamus proceeding, through facial challenge to the agency under 706-A. There are other avenues available for them than making such an argument in this specific case. So the reason I'm trying to drill down on this is that one of your arguments in your brief is that even if we don't consider the subsequent statement, we can just look at what they said on April 20th and April 22nd. And that is sufficient under our precedent to allow review because they invoked Heckler v. Cheney, so we know that they were invoking a prosecutorial discretion. That means then we know that there's a presumption of non-reviewability. If we don't know anything about the basis for exercise of that discretion, how can we evaluate whether that presumption might be overcome by what their views? I don't think the Heckler presumption is case-specific in that way. I think the Heckler presumption is, is this type of agency action reviewable? In New Models and in Commission on Hope, this court looked at the FECA and said there is no law for us to apply to the agency's decision of whether to use its prosecutorial discretion. So I don't know that you could say in a particular case the Heckler presumption doesn't apply. I don't understand how that argument can preclude evaluating whether the prosecutor correctly interpreted the substantive law that governed their decision. So, for instance, if it were just a very simple, crass example, if you had a criminal prosecutor who said, well, there is a rape statute, but I believe that rape can't occur between a husband and a wife when they are married. And so I'm not going to exercise my prosecutorial discretion ever to prosecute a husband for raping his wife. You're saying that a court can't look at that and say, well, the statute doesn't say that, so you are reading something into the statute that's not there. We may or may not agree, but you're just saying that the court has no role there. There's no law for the court to apply. I wouldn't say that, Your Honor, because there are few, to be sure, but there are a handful of cases where agencies have adopted policies like that that are prosecutorial policies across a number of fields. And those have been subject to review through court proceedings, notwithstanding Heckler, in order to determine whether those policies are an abdication of the agency's responsibility. I could also possibly see, for example, a take care clause violation that could be implicated by an agency entirely saying we are no longer going to enforce a particular category of law or regulation going forward. But that doesn't speak to here, where – If I could acknowledge that, then if someone challenged the declination of prosecution where there was a husband who – let's say there's videotape of the incident that seems to compellingly show that there was a rape of his wife, and the prosecutor just uses the magic words, under my prosecutorial discretion, I'm not prosecuting that. You're saying that that would be the end of the matter because he used those magic words? Because the presumption – if there's a presumption and as soon as he uses the magic words, it's effectively irrebuttable? I think there are other checks on a prosecutor who has abandoned his duties in that way, that there are modes of supervision, of removal, of oversight. I'm not sure that HECA applies such a standard here. And in fact, in new models, this court has said that HECA does not provide a standard to govern the commissioner's exercise of power. But, I mean, it's black-letter law since the beginning of time that it's an abuse of discretion for an official to exercise their discretion based on an erroneous view of the law, right? That's correct. And Commission on Hope says that the court is not reviewing the commissioner's decision on an abuse of discretion basis. It is an unreviewable decision, which is different in kind from the ordinary type of abuse of discretion review, which would necessitate a longer explanation than simply a failed vote dismissed under HECLA versus Cheney. But because once the commissioners have acted in exercise of their prosecutorial discretion, it is entirely… So, prosecutorial discretion can be abused under the traditional abuse of discretion standard, and that's what HECLA v. Cheney stands for? I'm not sure that it does stand for that. Certainly, that's intention… Is that your argument? No, no. And if I've misled Your Honor, I apologize for that. But in Commission on Hope, the court says that you are not reviewing the agency's decision under an abuse of discretion standard. Instead, it is an unreviewable decision. So, it does not even particularly matter how reasonable the exercise of prosecutorial discretion is. It simply matters that the agency is, in fact, exercising its prosecutorial discretion and says that is the basis for its action, which was clear here. We've gone from presumption of nonreviewable to just unreviewable under any circumstances. The presumption of nonreviewability is, in general, when we look at an agency A4CRI and try to decide, does this agency have—is this agency's decision to exercise prosecutorial discretion subject to review? Under a particular statute, it could be. A statute could say the commissioner shall do A, B, and C after considering these factors. That's not what HECA says. And in Commission on Hope, because of that and in new models, this court has said that HECA gives no law to guide the commissioner's decision. And as a result, the commissioner's exercise of prosecutorial discretion is a question that is committed solely to the agency and is unreviewable by a court. I suppose the FEC decides that for any exercise of prosecutorial discretion, they will not issue any simultaneous statement other than the controlling commissioner's exercise of prosecutorial discretion. That's it. I think this was partly what drove the dissenting opinion in the new models. Now, they are— Now, under our case, suppose the commission just adopts that policy, and now we get the next case in the series. We get the first one of those cases. And the district court has found that that's okay because exercises of prosecutorial discretion are unreviewable. It comes up to us. What do we do with our requirement that the commission issue—that the controlling commissioner issue an explanatory statement? So that is not present in this case because of a simultaneous statement. I know that. I know that. That's why I started my question with— Certainly. Certainly. I believe that that would be an adequate explanation by the agency because new models in Commission on Hope ask whether prosecutorial discretion was invoked, not whether it was invoked reasonably. It is an unreviewable decision once the commission has chosen to exercise prosecutorial discretion not to pursue an enforcement proceeding. When you put your chips to the middle of the table, you put them all in, right? I don't want to play poker with you. Respectfully, the decision of the district court should be affirmed. Thank you. Thank you, Your Honor. All right. Any other questions, Judge Rogers? No, thank you. David? No. All right. Thank you, counsel. All right. Mr. Hancock, I was joking earlier. Of course, we'll give you time for rebuttal. We'll give you three minutes. And if you weren't already planning to start with response to the discussion we just had, would you? I suppose the commission adopts the practice that I just described. Exercises of prosecutorial discretion require nothing more. They satisfy their obligation to give a contemporaneous explanation by stating that that's what they thought. I think that would be impermissible under this court's case law, especially under new models. I think the basis for the exercise of prosecutorial discretion still matters, even though if it is effectively invoked, it can insulate a commission dismissal. And the primary reason for that is the fact that if a commissioner just says prosecutorial discretion is a magic word, it's not effective. If the reason why the commissioner is doing that is because they have an interpretation of FECA that can validly be challenged under FECA's contrarian law standard. That's what makes FECA unique and the FECA unique from other agencies. And new models of commissioning still make clear that interpretations of FECA and the view on the merits that result from that are still reviewable under the contrarian law standard, despite the fact that prosecutorial discretion can, in some instances, insulate a dismissal. And I think the application issue that Your Honor is referencing has important implications for the issue of the timing of the statement of reasons. You know, if controlling commissioners, if failing to go forward commissioners are able to wait until the 60-day deadline passes to see if litigation is filed, then file a statement serving prosecutorial discretion to kill review of a lawsuit, they would be able to effectively only do that when necessary. If they're required to issue a statement at the time of their actual dismissal and they want to insulate every single dismissal, they'll be forced to assert prosecutorial discretion every time and they will open themselves up to allegations that they've abdicated their law enforcement responsibility, which would be, of course, an exception to Heckler and would pierce the presumption of unreviewability established by Heckler. So allowing these late statements would effectively allow them to dodge allegations of abdication. Now, of course, we haven't brought an abdication claim in this case, but that's beside the point. I think the incentive set up by the Shikors ruling would allow for that. I just want to clarify something. I saw maybe two paragraphs in your brief that challenged the substance of the subsequent statement. But I don't really see any real challenge that if we consider those statements that they reveal something contrary to law. Before the district court, we argued that invocation of prosecutorial discretion in that late statement was ineffective. The district court ruled against us and we decided not to appeal that aspect of the district court's ruling. Okay. Just want a clarification on that. Unless Your Honor has any additional questions? Judge Rogers? No. Oh, thank you. All right. We will take the case under advisement. Mr. Casasa, you were appointed by the court to represent the appellees in this case and we thank you for your very able act. Second. I agree. Thank you.
judges: Wilkins, Rogers, Tatel